ANTHONY COLABUFALO *vs.* BOARD OF APPEAL OF THE CITY
OF NEWTON & another.

Middlesex. May 8, 1957. — June 20, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Zoning. Newton. Municipal Corporations,* Officers and agents. *Equity
Pleading and Practice,* Zoning appeal. *Board of Appeals.*

A provision of the zoning ordinance of Newton purporting to authorize
the board of aldermen to grant a zoning variance was invalid as in
conflict with G. L. (Ter. Ed.) c. 40A, § 15, inserted by St. 1954, c. 368,
§ 2, and gave the board no power to grant a variance. [214–216]

After the granting of a purported zoning variance by the board of alder-
men of a city, the issuance of a building permit by its public buildings
commissioner pursuant to the purported variance, an appeal from the
issuance of the permit by a "person aggrieved" thereby to the zoning
board of appeal under G. L. (Ter. Ed.) c. 40A, § 13, as appearing in
St. 1955, c. 325, § 1, and a decision by the board of appeal approving
the issuance of the permit, invalidity of the action of the board of
aldermen in granting the purported variance as beyond its power might
properly be determined on an appeal from the decision of the board of
appeal to the Superior Court in equity under § 21, inserted by St.
1954, c. 368, § 2, by the same "person aggrieved." [216–218]

Upon an appeal to a zoning board of appeal of a city from a decision of
the public buildings commissioner to issue a building permit, a finding
by the board that the board of aldermen had properly authorized a
zoning variance pursuant to which the commissioner acted was not
the equivalent of a decision by the board of appeal to grant the vari-
ance under G. L. (Ter. Ed.) c. 40A, § 15, inserted by St. 1954, c. 368,
§ 2. [218]

A certain order of the board of aldermen of a city purporting to grant a
zoning "variance" under the authority of a provision of the city's
zoning ordinance was not to be construed as an order granting a per-
mit for an extension of a nonconforming use pursuant to another pro-
vision of the ordinance authorizing it to grant such a permit. [218–
219]

BILL IN EQUITY, filed in the Superior Court on January 6,
1956.

The suit was heard by *Paquet,* J.

*John J. Grady,* for the plaintiff.

*James H. Dixon, (John R. Carney, Jr.*, with him,) for the intervener.

WHITTEMORE, J.  This is a bill in equity under G. L. (Ter. Ed.) c. 40A, § 21, inserted by St. 1954, c. 368, § 2, by way of an appeal from a decision of the board of appeal of the city of Newton approving the issuance under the zoning ordinance of a permit by the public buildings commissioner to the intervener DiCarlo Bros., Inc., for the erection of a garage, workshop and office building on land on Hamlet Street.  The case is here on appeal from the decree of the Superior Court that the decision of the board requires no modification.

The land in question is in a private residence district and is across the street from the area which is the subject of the decision in *Colabufalo* v. *Public Buildings Commissioner of Newton*, 332 Mass. 748.  Our opinion on an appeal in ancillary contempt proceedings in that case is at page 205, *ante*.

A building such as is described in the permit is not permitted in a private residence district under the provisions of the ordinance which state district uses.  Prior to the issuance of the building permit the board of aldermen on October 17, 1955, issued an order purporting to grant to the intervener defendant a variance for the construction of the building.  The board of appeal found that the order of the board of aldermen authorized the building, that it "will involve no substantial detriment to the neighborhood, that denial of the permit will result in substantial hardship to DiCarlo Bros., Inc., and that erection of the proposed building will be without derogation from the purpose and intent of the zoning ordinances."

The controlling issue is the jurisdiction of the board of aldermen to grant the so called variance under the statute and ordinance.  No ground is suggested on which the buildings commissioner could deny a permit for construction which had been authorized by the board of aldermen under a valid provision of the ordinance or for a reversal of his action in such case by the board of appeal.

1. The board of aldermen had no power to grant variances.

The provision of the ordinance [1] which purports to give it this power conflicts with the enabling statute. *Massachusetts Feather Co.* v. *Aldermen of Chelsea,* 331 Mass. 527, 529–530. Cases cited in *Planning Board of Reading* v. *Board of Appeals of Reading,* 333 Mass. 657, 660, to the statement that a "by-law cannot conflict with the statute." *Tranfaglia* v. *Building Commissioner of Winchester,* 306 Mass. 495, 497. *Leahy* v. *Inspector of Buildings of New Bedford,* 308 Mass. 128, 131. *Smith* v. *Board of Appeals of Fall River,* 319 Mass. 341, 343–344. See *Commonwealth* v. *McFarlane,* 257 Mass. 530.

The statutory provisions for the granting of variances by boards of appeals are precise and complete (*Turner* v. *Board of Appeals of Milton,* 305 Mass. 189, 192); they occupy the field. G. L. (Ter. Ed.) c. 40A, § 15.[2] There were similar provisions in the predecessor statute, G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, as amended. In St. 1954, c. 368, which inserted c. 40A, it is provided in § 3: "The provisions of chapter forty A of the General Laws, so far as they are the same as those of sections twenty-

---

[1] Section 23.20: "(a) When in its judgment the public convenience and welfare will be substantially served, the board of aldermen, may, on petition, and subject to such appropriate conditions and safeguards as it may impose, which may include provisions for yearly renewals and revocation at the pleasure of the board of aldermen, vary the application of the district regulations heretofore established in harmony with their general intent and purpose, to: . . . 8. Permit with respect to a particular parcel of land a variance from the terms of this chapter where, owing to conditions especially affecting such parcel, but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of this chapter involves substantial hardship to the petitioners and where desirable relief may be granted without substantially derogating from the intent or purpose of this chapter, but not otherwise."

[2] "A board of appeals shall have the following powers: . . .

"3. To authorize upon appeal, or upon petition in cases where a particular use is sought for which no permit is required, with respect to a particular parcel of land or to an existing building thereon a variance from the terms of the applicable zoning ordinance or by-law where, owing to conditions especially affecting such parcel or such building but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law, but not otherwise.

"In exercising the powers under paragraph three above, the board may impose limitations both of time and of user, and a continuation of the use permitted may be conditioned upon compliance with regulations to be made and amended from time to time thereafter."

five to thirty B, inclusive, of chapter forty of the General Laws, shall be construed as continuations of said provisions, and the enactment of this statute shall not affect the validity of any action lawfully taken under said provisions prior to the effective date of this act." The zoning ordinance in § 23.25 provides, "The provisions of this chapter are ordained for the purpose of promoting the health, safety, convenience, morals and welfare of the inhabitants of the city in accordance with G. L., c. 40, Par. 25, et seq. . . ."

The statute expressly shows just how far it is intended that any board other than the board of appeals shall have the power to alter the effect of the ordinance or by-law as written. Section 4 provides that *exceptions* to the regulations and restrictions of the ordinance or by-law may be allowed and that *permits* therefor may be granted either by the board of appeals "or the city council of such city or the selectmen of such town." Prior to the enactment of c. 40A the power to grant exceptions, like the power to grant variances, so far as express, was exclusively in the board of appeals.[1] The limited extension of jurisdiction when c. 40A was adopted is significant to exclude a power in municipalities to go beyond the expression of the statute.

The ordinance contains a provision restating the statutory power of the board of appeal to grant variances (§ 23.21 [b] 2).

2. The invalidity of the action of the board of aldermen may be determined on this appeal.

The plaintiff by virtue of G. L. (Ter. Ed.) c. 40A, § 13, as appearing in St. 1955, c. 325, § 1,[2] had a right of appeal, and

---

[1] General Laws (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, as amended, dealing with powers and duties of boards of appeals, provided in relevant part: "Such ordinances or by-laws may provide that the board may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinances or by-laws in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained."

[2] "An appeal to the board of appeals established under section fourteen may be taken by any person aggrieved by reason of his inability to obtain a permit from any administrative official under the provisions of this chapter, or by any officer or board of the city or town, or by any person aggrieved by any order or decision of the inspector of buildings or other administrative official in violation of any provision of this chapter, or any ordinance or by-law adopted thereunder."

did appeal, to the board of appeal from the decision of the buildings commissioner, and under § 21 he had an appeal to the Superior Court from the decision of the board. The findings show that his residence is in the same zoning district and about three hundred feet away from the locus. It is not contended that he is not a "person aggrieved" within the meaning of §§ 13 and 21.

The decision of the board of aldermen was a nullity. *Massachusetts Feather Co.* v. *Aldermen of Chelsea*, 331 Mass. 527. See *Sterling's Case*, 233 Mass. 485, 489–490. This was a case of "an assumption by the board [under the terms of the ordinance] of a jurisdiction it did not have, rather than an erroneous exercise of the jurisdiction conferred upon it . . . ." *Clap* v. *Municipal Council of Attleboro*, 310 Mass. 605, 608. In the *Massachusetts Feather Co.* case, where certiorari was sought to determine that an appeal to the board of aldermen was invalid, we said at page 530, "The action of the board of aldermen was without jurisdiction and was a nullity, but in itself it did the petitioner no harm, and it is difficult to see how quashing it would do the petitioner any good."

Failure to take an appeal from the decision of the board of aldermen to the board of appeal under § 13, if such course was open,[1] and we intend no suggestion, does not foreclose the issue. We do not pause to determine what limitations, if any, apply to collateral attack by formal parties to administrative proceedings upon decisions therein which are void for want of jurisdiction. See Davis, Administrative Law, §§ 176, 179, 190; *Saint Luke's Hospital* v. *Labor Relations Commission*, 320 Mass. 467, 469–470. See, as to a decree of court, *Crystal, petitioner*, 330 Mass. 583, 591. The plaintiff, although he appeared before the board of aldermen, was not a formal party who initiated or responded to process. Furthermore the board of aldermen was in no

---

[1] Section 15 gives the board of appeals power to hear appeals taken under § 13, and § 16 provides that appeals shall be taken "by filing with the officer or *board* from whose order or decision the appeal is taken and with the board of appeals a notice of appeal specifying the grounds thereof" and contains further reference to such . . . [other] *board*" (emphasis supplied).

sense a court and there is little basis for implying in its decision an adjudication of its authority to act. Compare *Chicot County Drainage District* v. *Baxter State Bank*, 308 U. S. 371. The issue has been raised before there has been an opportunity for the intervener to change its position by action pursuant to an outstanding permit to build. The present appeal brings the issue to the Superior Court under the same section of the statute which would have applied had an earlier appeal been available and had it been taken. The interjection of the issuance of the building permit has had relevant effect only in bringing the proceedings to a stage where a statutory provision for an appeal is surely applicable.

3. The review by the board of appeal of the propriety of the grant of a variance by the board of aldermen is not the equivalent of an initial decision by the board of appeal to grant a variance. All at interest are by the statute entitled to the decision of the board of appeal unaffected by a prior decision by a board which had no jurisdiction to pass on the issue.

4. There are some indications that the board of aldermen was purporting to give a permit for the extension of a nonconforming use under § 23.9 (b) of the ordinance[1] rather than to grant a variance. The board's order reads in part, "Description of variance desired, size of lots: 34,320 square feet, construction of a non-conforming building on presently non-conforming land." The findings of the judge in the Superior Court speak of the "application for a permit" before the board of aldermen. The judge's finding, how-

---

[1] "A nonconforming building or structure may be structurally or substantially altered or reconstructed or may be altered or enlarged to permit the extension of a nonconforming use, and a nonconforming use may be extended in an existing building or structure or enlargement thereof, or may be introduced into a new building as a part of a nonconforming establishment existing December 27, 1922, and a nonconforming use may be changed to another nonconforming use which is not substantially different from the existing use, provided permission is obtained from the board of aldermen in accordance with the procedure provided in section 23.20. In granting such permission, the board of aldermen shall impose such conditions as may be necessary to protect the neighborhood from injury. As used in this paragraph, the word 'establishment' shall include buildings, structures and lands. (Ord. No. 276)."

ever, is that the board "granted . . . a variance" and the order of the board, after reciting, as having been found by the board, the requirements for a variance contained in the statute and the ordinance, G. L. (Ter. Ed.) c. 40A, § 15, states, "variance is hereby granted as follows: . . ." Also, in addition to the "Description of variance" as hereinabove set out, the order contains the following further reference: "Description of use to be made of land if variance is granted . . . ." The only brief [1] for the defendants, that of the intervener, argues that there was a properly granted variance and does not contend that the board of aldermen purported to grant a permit under the nonconforming use section of the ordinance.

We do not reach the question of the validity of the board's order construed as a permit. Whether or not the extension of a nonconforming use is to be classified as the granting of an exception under G. L. (Ter. Ed.) c. 40A, § 4, it is the exercise of a different power than the variance power. *Donovan Drug Corp.* v. *Board of Appeals of Hingham, ante,* 1, 4. *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass. 114. *Lawrence* v. *Board of Appeals of Lynn, ante,* 87, 89. Not only are the applicable criteria different but also the scope and effect of permissible action may not be the same. See *Planning Board of Reading* v. *Board of Appeals of Reading,* 333 Mass. 657; *LaMontagne* v. *Kenney,* 288 Mass. 363.

On the same day, in the same form the board purported to grant a variance applicable to the premises across the street. *Colabufalo* v. *Public Buildings Commissioner of Newton, ante,* 205, 211. Thus it is confirmed that variance power was one which the board consciously and intentionally purported to exercise. Persons at interest, as the plaintiff, rightly could act or refrain from acting, on the assumption that the board was undertaking to do what it declared it was doing. A case in point is *Hickox* v. *Griffin,* 298 N. Y. 365, 371. There is no room for indulging a presumption of the validity of the local action. Compare

---

[1] This brief states that counsel for the defendant board of appeal concurs therein.

*Caires* v. *Building Commissioner of Hingham*, 323 Mass. 589, 595, 596; *Co-Ray Realty Co. Inc.* v. *Board of Zoning Adjustment of Boston*, 328 Mass. 103, 108; *Concord* v. *Attorney General, ante*, 17, 25.

5. There is shown on this record no basis for the issuance of a permit to the intervener. The final decree is reversed and a decree is to be entered in the Superior Court vacating the decision of the board of appeal and ordering that it deny or direct the denial of the application for a building permit, and ordering also that the clerk within thirty days after the entry of the decree send an attested copy thereof to the board.

*So ordered.*