In the Matter of SUSAN H. CLARK et al., Appellants, against BOARD OF ZONING APPEALS OF THE TOWN OF HEMPSTEAD et al., Respondents, and RICHARD W. BARNES, Intervener, Respondent.

Argued April 6, 1950; decided May 25, 1950.

*Irving H. Schafer* for appellants. I. The owner failed to show practical difficulties and unnecessary hardships as a matter of law. (*Matter of Otto* v. *Steinhilber,* 282 N. Y. 71; *Matter of Y. W. H. A.* v. *Board of Standards & Appeals,* 266 N. Y. 270; *Matter of Levy* v. *Board of Standards & Appeals,* 267 N. Y. 347; *Matter of Pounds* v. *Board of Standards & Appeals,* 129 Misc. 676, 223 App. Div. 861, 248 N. Y. 591;

*Matter of Von Elm* v. *Zoning Board of Appeals*, 258 App. Div. 989; *O'Brien* v. *Town of Greenburgh*, 239 App. Div. 555, 266 N. Y. 582; *Brocoris Realty Corp.* v. *Village of Scarsdale*, 241 App. Div. 735; *People ex rel. Fordham Manor Ref. Church* v. *Walsh*, 244 N. Y. 280; *Brous* v. *Town of Hempstead*, 272 App. Div. 31; *Matter of Ostrove* v. *Cohen*, 269 App. Div. 1054; *Matter of Aberdeen Garage* v. *Murdock*, 257 App. Div. 645, 283 N. Y. 650. II. The granting of applicant's appeal fails to do substantial justice to surrounding property owners and was arbitrary, unjust and oppressive. (*Holy Sepulchre Cemetery* v. *Board of Appeals of Town of Greece*, 271 App. Div. 33; *Matter of Y. W. H. A.* v. *Board of Standards & Appeals*, 266 N. Y. 270.)

*George R. Brennan* for respondents. Intervener-respondent has sustained the burden of proof by showing that the land in question cannot yield a reasonable return if used for the purposes limited by the district uses and that the plight of the owner is due to unique circumstances and not general conditions. (*Matter of Otto* v. *Steinhilber*, 282 N. Y. 71; *People ex rel. Hudson-Harlem Valley Tit. & Mtge. Co.* v. *Walker*, 282 N. Y. 400; *Matter of Rubel Corp.* v. *Murdock*, 255 App. Div. 224, 280 N. Y. 839; *People ex rel. Sullivan* v. *McLaughlin*, 266 N. Y. 519; *Matter of Foy Productions* v. *Graves*, 253 App. Div. 475, 278 N. Y. 498; *Nectow* v. *City of Cambridge*, 277 U. S. 183; *Matter of Hickox* v. *Griffin*, 274 App. Div. 792; *People ex rel. Werner* v. *Walsh*, 212 App. Div. 635, 240 N. Y. 689; *Matter of Chizner* v. *Walsh*, 236 App. Div. 731, 261 N. Y. 707.)

*Nathaniel A. Kahn* for intervener, respondent. I. Intervener-respondent met the tests set up by the law in proving practical difficulties and unnecessary hardships entitling him to a variance. (*Matter of Otto* v. *Steinhilber*, 282 N. Y. 71; *People ex rel. Arseekay Syndicate* v. *Murdock*, 265 N. Y. 158; *Proc Bldg. Corp.* v. *Connell*, 264 N. Y. 513; *People ex rel. Hudson-Harlem Valley Tit. & Mtge. Co.* v. *Walker*, 282 N. Y. 400; *Matter of Rubel Corp.* v. *Murdock*, 255 App. Div. 224, 280 N. Y. 839; *People ex rel. Sullivan* v. *McLaughlin*, 266 N. Y. 519; *Matter of Foy Productions* v. *Graves*, 253 App. Div. 475, 278 N. Y. 498; *Nectow* v. *City of Cambridge*, 277 U. S. 183; *People ex rel. St. Albans-Springfield Corp.* v. *Connell*, 257 N. Y. 73.) II. The granting of the variance did not create any injustice to sur-

rounding property owners, and appellants have failed to show that the action of the board was arbitrary, unjust and oppressive.

DESMOND, J. This proceeding was brought, under article 78 of the Civil Practice Act, to review a determination by respondent board of zoning appeals of the town of Hempstead, Nassau County, by which determination the board had granted to intervener-respondent Barnes, a variance of the town zoning ordinance, so as to permit Barnes to erect, on a lot owned by him in a " B Residence District," a building to be used as a combined residence and funeral home. Petitioners-appellants are a few of the more than two hundred nearby residents who objected, before the board, to the application for this variance. Petitioners were defeated in the courts below, but we granted them leave to come here.

We hold that the board's action in authorizing this variance was without legal basis. The premises of intervener-respondent, as to which the variance was granted, is a vacant lot, 100 feet wide, on the west side of Westminster Road, in a section of the town of Hempstead known as Cathedral Gardens. When intervener-respondent bought that lot, in 1945, it was, and for some years had been, in a " B Residence District " under the town building zone ordinance. In such B residence zones, the permitted uses, under the ordinance, are: single residences, clubhouses, schools, churches, professional offices in dwellings, and some others. A funeral home, or undertaker's establishment, is not such a lawful use. Nevertheless, intervener Barnes purchased the lot, then applied for a variance. We could end this opinion at this point by saying that one who thus knowingly acquires land for a prohibited use, cannot thereafter have a variance on the ground of " special hardship " (*Matter of Henry Steers, Inc.*, v. *Rembaugh*, 259 App. Div. 908, 909, affd. 284 N. Y. 621). But beyond that, we hold that the proof here made out, under applicable rules of law, no case for a variance.

At the hearing before the zoning board of appeals, intervener called witnesses to show that, about 260 feet south of his property, Westminster Road, on which his lot fronts, intersects the wide, much-traveled Hempstead Turnpike, that the lands along the turnpike are zoned for business, that on the corner lots at that Westminster-Hempstead intersection there are two

gas stations, that the parcels nearest to intervener's, on the west side of Westminster Road, are both used for physicians' homes and offices, and that, just opposite to Barnes' lot on Westminster Road, the frontage, for 600 feet north from the gas stations, is owned by a church corporation, on it being a church, a rectory, and (erected after the hearing) a parish school. All of these are, of course, specifically permitted uses, under the zoning ordinance, and there are no unauthorized uses anywhere in the vicinity. A real estate broker called by intervener testified, before the board, that intervener's parcel could not yield a reasonable profit if used only for purposes allowed under the ordinance. However, it is clear that the only basis for that conclusion was the witness' opinion that no one would be likely to buy that lot as the site for a fine residence, and it was not claimed that any effort had been made to sell the premises for any of the authorized uses. There was dispute, in the testimony heard by the board, as to whether the presence of a funeral parlor would depreciate values in the neighborhood. It was brought out, also, at the hearing, that intervener was then conducting his funeral establishment in a store around the corner on Hempstead Turnpike, but wished to move his business onto Westminster Road.

The proof just above summarized was insufficient for a variance. Section 267 of the Town Law empowers boards of appeals to vary the application of town zoning ordinances (subd. 5) '' Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such ordinances ''. But, as was recently held in *Matter of Hickox* v. *Griffin* (298 N. Y. 365, 370–371) : '' There must at least be proof that a particular property suffers a singular disadvantage through the operation of a zoning regulation before a variance thereof can be allowed on the ground of ' unnecessary hardship ' ''. Most frequently cited for that proposition is *Matter of Otto* v. *Steinhilber* (282 N. Y. 71, 76) where it is written that, before the board may vote a variance, there must be shown, among other things, '' that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself ''. The board, being an administrative and not a legislative body, may not review or amend the legislatively enacted

rules as to uses, or amend the ordinance under the guise of a variance (*Dowsey* v. *Village of Kensington,* 257 N. Y. 221, 227), or determine that the ordinance itself is arbitrary or unreasonable (*Matter of Otto* v. *Steinhilber, supra*). If there be a hardship, which, like the alleged hardship here, is common to the whole neighborhood, the remedy is to seek a change in the zoning ordinance itself (*Arverne Bay Constr. Co.* v. *Thatcher,* 278 N. Y. 222, 233; *Matter of Levy* v. *Board of Standards & Appeals,* 267 N. Y. 347). Nothing less than a showing of hardship special and peculiar to the applicant's property will empower the board to allow a variance (*People ex rel. Fordham Manor Ref. Church* v. *Walsh,* 244 N. Y. 280; *People ex rel. Arseekay Syndicate* v. *Murdock,* 265 N. Y. 158; *Matter of Y. W. H. A.* v. *Board of Standards & Appeals,* 266 N. Y. 270, appeal dismissed 296 U. S. 537; *Matter of Levy* v. *Board of Standards & Appeals, supra; People ex rel. Arverne Bay Constr. Co.* v. *Murdock,* 247 App. Div. 889, affd. 271 N. Y. 631; *Matter of Halpert* v. *Murdock,* 249 App. Div. 777, affd. 274 N. Y. 523; *Matter of Otto* v. *Steinhilber, supra; Matter of Hickox* v. *Griffin, supra*). The substance of all these holdings is that no administrative body may destroy the general scheme of a zoning law by granting special exemption from hardships common to all.

The orders below should be reversed and the determination of the zoning board of appeals annulled, with costs in all courts.

DYE, J. (dissenting). I vote for affirmance. To reverse the action of the board of zoning appeals and annul its determination is to say that the granting of the variance was arbitrary and capricious and constituted an abuse of discretion. This we may not do on the record before us. It is axiomatic and no longer open to doubt that where there is evidence to constitute a reasonable basis for the determination the court has no right to interfere and substitute its judgment for that of the administrative board charged with the duty of making a determination (*People ex rel. Hudson-Harlem Valley Tit. & Mtge. Co.* v. *Walker,* 282 N. Y. 400; *Matter of Rubel Corp.* v. *Murdock,* 255 App. Div. 224, affd. 280 N. Y. 839; *People ex rel. Sullivan* v. *McLaughlin,* 266 N. Y. 519; *Nectow* v. *City of Cambridge,* 277 U. S. 183; *People ex rel. St. Albans-Springfield Corp.* v. *Connell,* 257 N. Y. 73). With this I take it there is no quarrel. We should note also that no question is raised here as to

the validity of the ordinance or that the board has the power to vary or modify its application under appropriate circumstances. Our differences arise in testing the proof adduced in light of certain elemental prerequisites deemed essential, such as proof that the land in question cannot yield a reasonable return if used only for the allowable purpose and that the required variance will not alter the essential character of the locality: here it is conceded that there is such proof. It is in consideration of the sufficiency of proof as to the third element that our difference develops which calls for a showing that the plight of the owner is due to unique circumstances and not to a general condition in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself (*Matter of Otto* v. *Steinhilber,* 282 N. Y. 71), a majority being of the view that the proof was insufficient to warrant granting a variance in the proper exercise of discretionary authority (Town Law, § 267) as the hardship, if any, was a common burden which would not be deemed unique as to this property (see *Matter of Hickox* v. *Griffin,* 298 N. Y. 365; *Matter of Ernst* v. *Board of Appeals,* 298 N. Y. 831). For convenience of discussion, I refer to certain undisputed facts:

The property upon which Mr. Barnes desires to erect and conduct a funeral parlor is situated in a residential " B " zone (the variances sought in both the *Otto* and *Hickox* cases, *supra,* were for nonconforming uses in an " A " zone). This parlor would be located within 300 feet of the 6-lane, highly trafficked, Hempstead Turnpike and within 150 feet of a business zone. The lot to the west of the Barnes property is vacant and its owner is not objecting. Dr. McKenna immediately to the north does not .object. Dr. Cherwin across Regent Place to the south is the only adjacent owner objecting. The objectants Liebl who represent the property to the north of Dr. McKenna and on the corner of College Place have since sold the property to the church; the appeal should be dismissed as to them as moot. The church, rectory and parochial school directly across the street — concededly the school has been built since this variance was granted at which time that land was devoted to a public parking lot, a nonconforming use — are not averse to the Barnes proposal through its spokesman, Father Smith. In summary then, this is the physical situation

of this particular piece of property: it is flanked on both sides by physicians' offices and virtually surrounded — at least to the east and north — by institutional buildings. To the south is a congested business community with two gas stations, one on each corner nearest the subject property, uses which probably do more than any other to depress residential realty values. Under the existing zoning ordinance (Building Zone Ordinance of Town of Hempstead, art. 5) there is no practical conforming use to which Mr. Barnes could devote this property.

Fully aware of the elemental requirements laid down in the *Otto* case (*supra*), counsel for the applicant was very careful to adduce proof through a real estate expert to meet those tests. Material and pertinent to the sound or '' unique '' requirement is the following: '' Q. In your opinion, is this situation with respect to Mr. Barnes' property unique or is it a general condition in the neighborhood? A. No, I would say it would be unique. First it is hard to classify it in a Class A when you are only 150 feet from the Business Zone, a parking field and a contemplated school and a church, and put it in the same category as you would when you get to the first block north where you are going in a high class residential property.

'' Q. In other words, in all of this Cathedral Gardens section is there any other parcel that you know of that shows the same situation, being opposite a church, a parking field, a proposed parochial school, the professional offices on both sides, and the close proximity within 150 feet of gas stations and a business area? A. No, I don't know of anything. In fact, I would say that this is almost a perfect set up for this. One of the most important elements, I would think, would enter into this, would be the fact that being used as an undertaking establishment where the majority of cases are taken to the church, and where, if he operated elsewhere, he would have to be the same distance to the church, he would eliminate a lot of congestion, which, I believe, is one of the hazardous things.''

In addition to this testimony the record indicates that the board personally viewed the premises and surrounding neighborhood. Taken as a whole then the record contains proof substantial in character and quality, which by the standards usually applied in administrative proceedings is more than sufficient to sustain the board's implicit finding that the plight

of the owner is due to unique circumstances and not to a general condition in the neighborhood and this view is not contrary to the cited authorities denying relief. . In those cases — *Otto, Ernst* and *Hickox (supra)* we had no evidence of any sort and no such compelling physical circumstances as the proof here demonstrates. In the *Otto* case it was emphasized that a variance was not warranted upon that record. There the applicant sought a variance to erect a roller skating rink — a commercial use — upon property extending 500 to 600 feet into a residential "A" zone. There it was held that the record "does not set forth *any proof* of the three elements constituting unnecessary hardship within the meaning of the zoning laws." (P. 79, emphasis supplied.) I take this as a clear indication that the three tests while separately numbered are part of the same whole, the pronouncement of a standard by which the permissible but nevertheless existing discretion of the zoning board is to be guided. In the Long Island University case (*Matter of Hickox* v. *Griffin, supra,* p. 371) "Not an item of proof * * * appears in this record" in support of the variance there sought under the singular disadvantage test of the *Otto* case. Here there is no claim that the ordinance is unreasonable but where such is shown due to the imposition of restrictions which would limit the property to a use for which it is not adapted, we have ruled that "In such case the owner of the property cannot be required to ask as a special privilege for a variation of the restriction" (*Dowsey* v. *Village of Kensington,* 257 N. Y. 221, 231). The converse should be equally true. This is not a case where a claim is made that the ordinance is in general invalid and unreasonable. (*Rockdale Constr. Corp.* v. *Incorporated Vil. of Cedarhurst,* 300 N. Y. 642.) A property owner should not be required to find his relief by a change in the statute. The framers of the zoning ordinance undoubtedly recognized that a general ordinance could not always be successfully applied according to the strict letter of its terms. To meet the unanticipated exceptional situation, the board of zoning appeals is given authority in a reasonable exercise of discretion to afford relief (Village Law, § 179, subd. b; Town Law, § 267; General City Law, § 81). In *Matter of Ernst* v. *Board of Appeals (supra)* we declined to substitute our discretion for that of the board. I therefore feel, as did Judge (then Justice) FROESSEL

at Special Term, that " notwithstanding the fact that a different result might well have been arrived at, this Court has no right to interfere, and to substitute its judgment for that of the administrative officers ", especially when their determination finds support in the record.

The judgment appealed from should be affirmed.

LOUGHRAN, Ch. J., LEWIS and FULD, JJ., concur with DESMOND, J.; DYE, J., dissents in opinion in which CONWAY, J., concurs; FROESSEL, J., taking no part.

Orders reversed, etc.  [See 301 N. Y. 681.]